**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**CONWAY SCHOOL DISTRICT** **PLAINTIFF**

**v.** **CASE NO. 4:24-cv-01061-JM**

**R.V. and C.V., Parents and Next Friends of N.V.** **DEFENDANTS**

**BRIEF IN SUPPORT OF PLAINTIFF CONWAY SCHOOL DISTRICT'S MOTION FOR JUDGMENT ON THE RECORD**

Plaintiff, Conway School District ("District"), by its attorneys, Bequette, Billingsley & Kees, P.A., for its Brief in Support of its Motion for Judgment on the Record, states:

## I. INTRODUCTION

This is an appeal by the District under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq*. N.V. ("Student") was a student at the District at all times relevant to the Due Process Complaint. The Student's parents, Defendants R.V. and C.V., filed a Due Process Complaint ("Complaint") against the District on August 25, 2023, AR 1-16, which resulted in an administrative due process proceeding conducted by an impartial Hearing Officer ("HO") appointed by the Arkansas Department of Education ("ADE"). The hearing on the Complaint was conducted over seven days on January 23-26, March 1 and 4, and April 30, 2024. *See* AR 176-1451, 1466-1535.

The administrative record reveals that the Student was provided a free appropriate public education ("FAPE") throughout the time period at issue. Contrary to the record, however, the HO entered a Final Decision and Order ("Order") concluding the Student was denied a FAPE during the 2022-2023 and 2023-2024 school years and finding that Compass Academy ("Compass") is an appropriate private placement. AR 152-56.

The Order should be reversed because the Student was provided a FAPE during the 2022-2023 school year. The District further offered the Student a FAPE during the 2023-2024 school year, but the Student did not return to the District that school year. Moreover, the relief of indefinite private placement is in error because Compass is not an appropriate placement, and the award exceeds the allowable relief. For these reasons, as more fully discussed below, the Order should be reversed, and Defendants' claims dismissed.

## II. FACTUAL BACKGROUND

When the Complaint was filed, the Student was in her second-grade year. AR 2. The Student was a first-grader during the 2022-2023 school year and a kindergartener during the 2021-2022 school year at Marguerite Vann Elementary School at the District. AR 2-3, 2370, 2424. The Student is eligible for special education services under the category of multiple disabilities ("MD") due to her chromosome 14q11.2 deletion. AR 2324, 2481. The Student is nonverbal and also suffers from seizures, vision impairments, intellectual disability, oropharyngeal dysphagia, and corpus callosum agenesis. AR 239, 2269-70, 2324. While at the District, the Student received services in all academic areas, speech therapy, occupational therapy, physical therapy, personal care, and transportation. AR 2324-54, 2367-97.

In the Complaint, Defendants alleged the individualized education programs ("IEPs") provided to the Student for the 2021-2022 and 2022-2023 school years denied the Student a FAPE. AR 10-11. Defendants presented the following issues: (1) whether the District denied the Student a FAPE during the 2021-2022 and 2022-2023 school years, (2) whether the District's proposed 2023-2024 IEP is necessary and appropriate and will provide the Student a FAPE, and (3) whether the District should pay for the Student to attend private school and whether the private school is appropriate. AR 12. Defendants' requested relief was that the District be ordered to: (1) pay all tuition, fees, and costs, associated with the Student's enrollment and attendance at Compass

Academy for the 2023-2024 school year; (2) pay all tuition, fees, and costs of the Student's enrollment and attendance each successive school year until such time as the District offers the Student an IEP that can be implemented to provide her a FAPE in the least-restrictive environment; and (3) provide Defendants all other just and proper relief to which they are entitled. AR 15. In response to the Complaint, the District denied that it failed to provide the Student a FAPE or that Defendants were entitled to the requested relief. AR 24-33.

The evidence at the hearing shows the Student transitioned to the District from Arch Ford Education Service Cooperative preschool services on March 11, 2021. AR 2309-11. The IEP team determined that evaluations were needed to determine the Student's educational needs upon entering kindergarten. AR 2310. On May 6, 2021, the evaluation conference for the Initial IEP for Student's kindergarten (2021-2022) year took place. AR 2319-59. The IEP team reviewed the psycho-educational evaluation, speech and language evaluation, occupational therapy evaluation, physical therapy evaluation, and educational evaluation report. AR 2235-64. The Student's initial IEP was developed at that conference and covered the services to be provided to the Student during her kindergarten year. AR 2326-54. The IEP team held an annual review at the end of the Student's kindergarten year to develop an IEP for her first-grade year. AR 2362-99.

Based on the Student's needs and services, she was placed in a self-contained classroom, with a 1:10 teacher-to-student ratio. AR 2324. In the District, a 1:10 classroom is staffed with one certified special education teacher and two special education paraprofessionals, which creates an approximately 1:3 adult-to-student ratio. AR 220-22.

In the Student's kindergarten year, she missed over fifty-seven (57) days of school. AR 2775-77. In the first semester of the Student's first grade year, when she attended class on-campus, she missed over twenty-two (22) days of school. AR 2578-79. The Student has complex medical needs and is treated by Dr. Eduardo Ochoa at the Complex Care Clinic at Arkansas Children's

Hospital ("ACH"). AR 2455. On or around November 3, 2022, Dr. Ochoa sent a letter to the District stating:

> [The Student] has a genetic chromosome syndrome and is being followed by multiple specialties and subspecialties here at ACH like: Genetics, Neurology, and Rehab. [The Student] requires frequent appointments to different specialties throughout the school year. [The Student] does not need to follow a regular attendance policy. Please excuse any school absences.

AR 2455.

On January 5, 2023, the Student was injured by another student in the classroom ("Student J"). AR 374-76. Whitney Burns, the Student's special education teacher, left without warning at 8:30 a.m. on the day of the incident. AR 343-45. Due to a miscommunication between the paraprofessionals in the classroom, the incident was not reported to the District nurse, Amanda Townsend. AR 472. Ms. Townsend did spend additional time in the classroom to cover the absence of the teacher and testified that nothing about the Student that day caused her any concern. AR 787. The Student was pulling at her jacket sleeve that day, so Ms. Townsend lifted the Student's sleeve, examined her arm, and saw nothing. *Id.* Ms. Townsend did not notice any bruising on the Student. AR 786.

That night, Defendants took the Student to the emergency room because she was acting strangely and had bruising around her crotch. AR 1268-70. The Student was examined for sexual abuse and a call to the Arkansas Department of Human Services ("DHS") maltreatment hotline was placed. AR 1267-69, 2028-89. DHS started an investigation. AR 2028-49. The following day, the Conway Police Department ("CPD") came to the District to interview staff members. AR 2045. A paraprofessional in the Student's class was interviewed and cleared by the CPD. AR 2821-22. The CPD told the District employees not to discuss the investigation. AR 491-92, 1124.

Defendants were also told not to say anything or otherwise interfere with the investigation. AR 1244, 1274.

On January 6, 2023, CPD Detective Ivan Cortes told Defendant C.V. that another student had kicked and injured the Student. AR 1276-77. Defendant C.V. testified that the CPD's findings, "d[id]n't seem like an investigation" and "looks like a lie." AR 1277. On April 5, 2023, Defendant C.V. filed another police report against another District employee for the incident on January 5, 2023. AR 2826. That District employee was also investigated and cleared by the CPD. AR 2826-28. The District was not made aware of any allegation of sexual abuse until after April 17, 2023, when the police reports were obtained by the District after the second District employee was cleared of any wrongdoing. AR 490-91, 2812. It was not until after the due process proceedings were initiated that the District became aware of the DHS maltreatment investigation report on the allegations. AR 2028-29. The investigation found the claims to be unsubstantiated. AR 2028-29.

On January 18, 2023, the District received a recommendation from Dr. Ochoa to transition the Student to homebound services for the remainder of the school year. AR 2470. On February 2, 2023, the IEP team met to consider, and ultimately accepted, Dr. Ochoa's recommendation. AR 2463-68. The Student was placed in a homebound setting on February 2, 2023, and received, at Defendants' request, virtual homebound services. AR 2466.

The District called an IEP conference on March 3, 2023, to discuss the Student's virtual homebound services. AR 2472-96. The Notice of Action states:

> [Carrie] Vick, homebound teacher, reported many of [the Student]'s goals are difficult to achieve over a virtual format, such as her ball skills goal. She shared that [the Student often] becomes fatigued after 20-25 minutes. The committee discussed different options for addressing [the Student]'s goals through homebound services. The team shared that [the Student]'s classroom has a new teacher and offered that [Defendant C.V.] bring [the Student] back for onsite instruction. [Defendant C.V.] did not feel comfortable with this option. The team offered in person homebound services provided at

> school in a private setting with [the Student] and Mrs. Vick. The team also offered to keep [the Student]'s homebound services virtual. [Defendant C.V.] stated she would like to have [the Student] continue with virtual homebound services with a break built in so that Student can rest and the parent can ask questions about the session.

AR 2475.

The Student's virtual homebound services were shortened to forty-five (45) minutes to accommodate her attention and engagement in a virtual setting. *Id.* On April 17, 2023, a new homebound teacher, Lauren Bisbee, took over providing homebound services to the Student. AR 2549-56. After realizing that the Student was being provided three hours of homebound services, the District amended the teacher's homebound plan to four hours to meet state requirements. AR 1422.

The Student's annual review conference was held on April 25, 2023. AR 2498-2523. At the annual review, progress was reviewed from the 2022-2023 IEP and a new IEP was developed for the 2023-2024 school year. *Id.* A meeting was planned for August of 2023 to determine if the Student could return to school based on her doctor's recommendation and if so, plan for a transition back into a new campus. AR 250. The IEP team also planned to review reports from outside therapy agencies that Defendant C.V. mentioned had been done. *Id.*

On August 17, 2023, Defendant C.V. attended an open house at Ellen Smith Elementary School for the Student's new special education classroom. AR 1291-92, 1434. The new classroom had an experienced certified special education teacher and students at a similar level of need as the Student, which the District believed would be a good fit. AR 1434. At the open house, Defendant C.V. brought supplies for the Student, including her activity chair and diapers. AR 1291-92.

The Student, however, never returned to school for the 2023-2024 school year. The Student was absent the first week of school. AR 1295-96. Defendant C.V. testified that she sent a message

to the new District translator to let her know that the Student was sick and would not be at school. *Id.* On August 24, 2023, a letter was provided by Pediatrics Plus that the Student would be out for weekly appointments on Mondays and Wednesdays from 9:15 to 11:15 a.m. and Thursdays from 11:00-11:45 a.m. AR 2831. Then, on August 25, 2023, the District was notified of the request for private school placement simultaneously with the filing of the Complaint. AR 1-16. On August 30, 2023, ACH sent the District a "request to excuse absences due to [the Student's] fragile medical history." AR 2833-35. The District was notified of the Student's enrollment in Compass in September of 2023. AR 1371-72.

Following the hearing, the HO entered the Order on June 22, 2024. AR 137-57. The HO held the Student's IEPs for the 2022-2023 and 2023-2024 school years did not meet the substantive requirements of the IDEA, resulting in a denial of FAPE. AR 154. The HO relied on the January 5, 2023, incident, the District providing the Student homebound, virtual services, and the lack of an amended IEP to return the Student to in-person instruction at the beginning of the 2023-2024 school year. AR 153-54. While the HO generally discussed the Student's 2021-2022 school year, the HO did not make any finding on whether the Student was denied a FAPE during that time.[1] *See* AR 137-57. The HO determined that Compass is an appropriate placement for the Student. AR 155. The District was ordered to pay the balance of tuition, fees, and costs, after the deduction of any scholarship funds, and the cost of transportation, for the Student to attend Compass from and after the date of the Student's enrollment at Compass on September 18, 2023. AR 156.

---

[1] Because the HO did not find that the Student was denied a FAPE during her kindergarten year, the District does not address this issue on appeal. To the extent Defendants seek to raise on appeal this issue, or any other issue not relied upon by the HO below, and any such issue is found preserved, the District adopts and incorporates herein its arguments below. AR 113-36.

## III. STANDARD OF REVIEW

The IDEA permits a party seeking review of a state administrative decision to appeal to federal district court. 20 U.S.C. § 1415(i)(2)(A). "In conducting that review, the court 'shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.'" *Indep. Sch. Dist. No. 283 v. S.D. by J.D.*, 88 F.3d 556, 560 (8th Cir. 1996) (quoting 20 U.S.C. § 1415(e)(2)). "Judicial review of agency action may be conducted on the administrative record even if there are disputed issues of material fact." *Id.* at 561.

This Court must make a *de novo* determination as to whether the student was denied a FAPE, but "due weight" must be afforded the administrative decision. *See, e.g., T.F. v. Special Sch. Dist. of St. Louis Cnty.*, 449 F.3d 816, 818 (8th Cir. 2006). This is because the HO had "an opportunity to observe the demeanor of the witnesses and because the court should not substitute its own educational policy for those of the school authorities that they review." *CJN v. Minneapolis Pub. Sch.*, 323 F.3d 630, 636 (8th Cir. 2003) (quotations omitted).

## IV. APPLICABLE LAW

The IDEA is a federal law that governs how states and public agencies provide special education and related services to children with disabilities as defined by the IDEA. 20 U.S.C. §§ 1400, *et seq*. The IDEA and its predecessor statute, the Education for All Handicapped Children Act, arose from federal case law holding the deprivation of free public education to disabled children constituted a deprivation of due process. 20 U.S.C. § 1400(c). In defining the purpose of special education, the amendments to the IDEA passed by Congress in 2004 clarifies Congress' intended outcome for each child with disabilities. 20 U.S.C. § 1400(d). Students must be provided

a FAPE that prepares the student for further education, employment, and independent living. 20 U.S.C. § 1400(d); *Gill v. Columbia 93 School Dist*., 217 F.3d 1027, 1035 (8th Cir. 2000).

The Supreme Court explained in *Winkelman v. Parma City School District*, 550 U.S. 516, 525, 127 S. Ct. 1994, 167 L. Ed. 2d 904 (2007):

> [w]hen a party objects to the adequacy of the education provided, the construction of the IEP, or some related matter, IDEA provides procedural recourse: It requires that a State provide "[a]n opportunity for any party to present a complaint . . . with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." § 1415(b)(6) . . . . If the agency "has not resolved the complaint to the satisfaction of the parents within 30 days," § 1415(f)(1)(B)(ii), the parents may request an "impartial due process hearing," § 1415(f)(1)(A) . . . where a hearing officer will resolve the issues raised in the complaint. § 1415(f)(3). IDEA sets standards the States must follow in conducting these hearings. Among other things, . . . the hearing officer's decision "shall be made on substantive grounds based on a determination of whether the child received a free appropriate public education," § 1415 (f)(3)(E)(i), and that, "[i]n matters alleging a procedural violation," the officer may find a child "did not" receive a free appropriate public education," § 1415(f)(3)(E)(ii) only if the violation "(I) impeded the child's right to a free appropriate public education; (II) significantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of a free appropriate public education to the parents' child; or (III) caused a deprivation of educational benefits."

An appropriate education is therefore provided when personalized educational services are provided. *See Board of Educ. of the Hendrick Hudson Central School Dist. v. Rowley*, 458 U.S. 176, 197, 102 S. Ct. 3034, 73 L. Ed. 2d 690 (1982). The IDEA defines "free appropriate public education" as:

> Special education and related services that – (A) have been provided at public expense, under public supervision and direction, and without charge, (B) meet the standards of the State educational agency, (C) include an appropriate preschool, elementary, or secondary education . . . , and (D) are provided in conformity with the [IEP] required under Section 1414(a)(5) of this title.

20 U.S.C. § 1401(a)(18).

In *Rowley*, the Supreme Court set forth a two-part inquiry for IDEA claims. First, it must be determined whether the State has "complied with the procedures set forth in the Act . . . ." *Rowley* at 206-07. Second, the [IEP] must be "reasonably calculated to enable the child to receive educational benefits." *Id*. "If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more." *Id*. In *Rowley*, the court concluded that a FAPE must provide a "basic floor of opportunity" to students with a disability, not a "potential-maximizing education." *Id*. at 201. The court further held that courts will not "substitute their own notions of sound educational policy for those of the school authorities." *Id*. at 206.

More recently, the Supreme Court has ruled that school districts must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances. *Endrew F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 399, 137 S. Ct. 988, 197 L. Ed 2d 335991 (2017). "Even though Congress was rather sketchy in establishing substantive requirements under the [IDEA], the Act guarantees a substantively adequate program of education to all eligible children[.]" *Id*. at 394. The substantive requirement is satisfied, and a child has received a FAPE, if the child's IEP sets out an educational program that is reasonably calculated to enable the child to receive educational benefits. *Id*. The "reasonably calculated" qualification reflects a recognition that crafting an appropriate program of education requires a prospective judgment by school officials. *Id.* at 399. Any review of an IEP must appreciate that the question is whether the IEP is reasonable, not whether the court regards it as ideal. *Id*.

## V. ARGUMENT

### A. The Student Was Provided a FAPE During Her First Grade Year.

The record clearly establishes the Student was provided a FAPE while enrolled at the District, including during her first-grade year. Contrary to the record, the HO concluded that the Student was denied a FAPE during her first-grade school year because the Student's IEP, before amending for homebound services, considered the 1:10 classroom environment with older, larger students, some of whom had aggressive maladaptive behaviors, as an appropriate placement. AR 152-53. The HO found the Student was pushed, hit, and kicked by other students, was not properly supervised in physical education resulting in a head injury, and was subsequently placed in an activity chair with a helmet instead of the IEP team reassessing the Student's placement. AR 153. The HO relied on the January 5, 2023, incident, and a lack of communication with Defendants regarding the incident. *Id.* The HO further found it unreasonable for the IEP team to expect meaningful educational benefits for the Student in homebound, virtual educational services, after homebound services were provided at Defendants' request and in accordance with the Student's doctor's recommendation. *Id.*

These findings, as addressed below, were in error. The Student's IEP was reasonably calculated to enable her to make progress appropriate in light of her circumstances. As the Supreme Court stated in *Endrew*, "the statement [in *Rowley*] that the Act did not 'guarantee any particular level of education' simply reflects the unobjectionable proposition that the IDEA cannot and does not promise 'any particular [educational] outcome.' No law could do that – for any child." 580 at 398 (citations omitted). Instead, school districts must implement academic plans that are reasonably calculated so that a student has an opportunity to make progress. *See Rowley*, 458 U.S.

at 207;[2] *Endrews*, 580 at 399.[3] The Student made appropriate progress during her first-grade year. The HO, therefore, erred in concluding the Student was denied a FAPE.

1. <u>The Student's Placement in the 1:10 Classroom Was Appropriate and Resulted in Progress.</u>

The record substantiates the Student received a FAPE during her first-grade year. The Student was in a self-contained classroom, with a 1:10 teacher-to-student ratio, which was staffed with one certified special education teacher and two special education paraprofessionals. AR 220-22. This teacher-to-student ratio complies with Arkansas regulations. ADE Special Educ. and Related Services, § 17.03.1.2. As the Student's special education teacher, Ms. Burns; the Student's physical therapist, Mrs. Hart; and the Student's speech language pathologist, Mrs. Cloud all testified, the Student made progress during her first-grade year. AR 278, 848, 912. The Student's placement in the 1:10 classroom at Marguerite Vann Elementary School was, therefore, appropriate and resulted in educational progress.

2. <u>No Incidents with Other Students Resulted in a Denial of FAPE.</u>

To the extent the HO relies upon any pushes, hits, or kicks by other students in the Student's classroom, those incidents must have impeded the Student's ability to make appropriate progress to constitute a denial of FAPE. There is no evidence to support such a conclusion. In an analogous case under Title IX, the Supreme Court cautioned courts to "bear in mind that schools are unlike the adult workplace and that children may regularly interact in a manner that would be unacceptable among adults." *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 651, 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999). Elementary-school students "often

---

[2] *Rowley* provides that a FAPE must provide a "basic floor or opportunity" to students with a disability, not a "potential maximizing education." 458 U.S. at 197 n.21, 201.

[3] *Endrews* concurred with *Rowley* in part, that an IEP need not be ideal, just reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances. 580 U.S. at 399.

engage in insults, banter, teasing, shoving, [and] pushing," but the behavior must be "so severe, pervasive, and objectively offensive that it denies its victims the equal access to education" before the school is responsible. *Id.*at 652. *See also A.R. v. Cape Henlopen Sch. Dist.*, No. 1:21-cv-00146-TLA, 2023 U.S. Dist. LEXIS 67447, at *16 (D. Del. Apr. 18, 2023) (applying this standard to determine whether a school district provided a FAPE).

Overall, the severity and frequency of any pushes, hits, or kicks of the Student by other students did not rise to the level that required the District to make systematic changes and modify the Student's IEP, especially before the January 5, 2023, incident. Notably, Ms. Burns was surprised by the January 5, 2023, incident because Student J was usually very gentle with the Student. AR 306-07. While Ms. Burns testified to other incidents where the Student was pushed by Student J, Ms. Burns would always get between them to break it up. AR 249, 306. Usually, these pushes occurred when the Student tried to take Student J's toys, and Student J would push the Student gently to get her away. AR 345-46. Ms. Burns would notify Defendant C.V. if any push was significant or otherwise caused the Student to cry. AR 249, 342. There is no evidence that the Student was injured by any push, hit, or kick with another student before January 5, 2023. There is further no evidence that any such incident denied the Student access to FAPE. The HO, therefore, erred in concluding that the Student was denied a FAPE as a result of these incidents with other students.

3. <u>All Safety Measures Taken with the Student Were Reasonable and Appropriate.</u>

The Student's use of an activity chair and helmet were appropriate and did not result in a denial of FAPE. The Student was placed in an activity chair for a variety of reasons, not just to help prevent behavioral incidents with other students, including to keep her safe from falling because of her poor balance, to assist with her ability to eat, and to allow her to better sit and

observe assignments. AR 200-02, 224. District staff removed the Student from the chair as much as possible. AR 226. The Student was not in the chair during her activity classes—music, physical education, library, and gifted and talented, except for art class where the chair's activity tray assisted with art projects. AR 236-37. If the Student ever became tired of the chair, she would cry, and the District staff would remove her and let her move. AR 239.

The helmet was worn because the Student lacks stability and will not catch herself if she falls. AR 279-80, 809-10. It was for her safety. AR 809-10. The Student was originally recommended a helmet by a physical therapist because the Student was having seizures. AR 211-12. At the May 5, 2022, IEP meeting, Defendant C.V. stated that she only wanted the helmet worn outside. AR 2368. The Student, however, fell and got a knot on her head when she was not wearing her helmet in the gym for physical education. AR 399-400, 810. Notably, the Student continues to wear the helmet at Compass, while at recess and on days when she is not able to stand very well. AR 1360. Neither the use of the activity chair, nor the use of the helmet, denied the Student a FAPE.

4. Any Lack of Communication Regarding the January 5, 2023, Incident Did Not Result in a Denial of FAPE.

Contrary to the HO's findings, there is no evidence that any lack of communication concerning the January 5, 2023, incident, resulted in a denial of FAPE. On January 5, 2023, Student J caused a disruption and became physical with Ms. Burns, leading to that student being removed from the classroom and Ms. Burns leaving school for the day. AR 523-32. Student J was returned to the classroom as required under his behavior intervention plan. AR 687-88. After Student J returned to the classroom, Student J hit the Student and then kicked her in the lower leg as Mr. Thomas, a paraprofessional, was removing Student J from the classroom. AR 551-52, 2013.

Mr. Thomas then took Student J to the office. AR 596-97. Mr. Thomas did not see any physical injury to the Student. AR 591.

Mr. Thomas assumed the substitute paraprofessional would have notified the school nurse, Ms. Townsend, because she was in the classroom, but that was not done. AR 472, 624-25. Ms. Townsend saw the Student later that day but did see any bruising on the Student. AR 786. Because Ms. Townsend was not notified of the incident with Student J, no incident report was created nor did any initial contact with Defendants occur. AR 440-41, 482.

By the following day, DHS had already started an investigation into the January 5, 2023, incident and instructed District employees that they could not discuss that investigation. AR 491-92, 1124. Similarly, Defendants were told not to say anything about or otherwise interfere with the investigation, so they did not talk to the District about what happened. AR 1244, 1274. Nonetheless, on January 6, 2023, the investigating officer told Defendant C.V. that the Student had been kicked by another student. AR 1276-77. After the investigation was completed, the District had a conference with Defendant C.V. on April 21, 2023, to discuss this incident and the Defendants' concerns. AR 441-43.

In sum, while the District did not report the injury to Defendants on January 5, 2023, Defendants were informed the following day by the investigating offer what happened. Nonetheless, Defendants still did not want the Student to return to campus. The District, however, continued to provide the Student a FAPE after the incident. Thus, there is no evidence that any lack of notification on January 5, 2023, resulted in a denial of FAPE.

### 5. <u>The District Provided a FAPE Through Homebound Educational Services.</u>

The IEP team properly transitioned the Student to virtual, homebound services on February 2, 2023, at the request of Defendants and the Student's medical provider, Dr. Ochoa. On January 18, 2023, Dr. Ochoa recommended that the Student remain homebound for the remainder

of the school year due to the Student's "[c]omplex [m]edical history and a traumatic incident that occurred." AR 2470. Further, Defendant C.V. requested virtual services, as opposed to bringing the Student back to school for services. AR 685-86. On February 2, 2023, the IEP team accepted Dr. Ochoa's recommendation and Defendants' request and placed the student in virtual, homebound services. AR 2466. Occupational therapy, physical therapy, and speech therapy were to be provided by Pediatrics Plus and not by the District, also at Defendant C.V.'s request. AR 2466. The Student remained on virtual, homebound services for the remainder of the 2022-2023 school year. AR 2501. The HO concluded that the District should have rejected these recommendations from Dr. Ochoa and Defendant C.V. because the Student would be unable to receive meaningful, educational benefit in that placement. AR 153. This conclusion was in error.

While a physician cannot prescribe special education, a physician's diagnosis and input on a child's medical condition is important and bears on an IEP team's informed decision on a student's needs. *Marshall Joint Sch. Dist. No. 2 v. C.D. ex rel. Brian D.,* 616 F.3d 632, 640-41 (7th Cir. 2010) (citing 20 U.S.C. § 1414(c)(1)(A)(iii)). Further, if a child is unable to attend classes due to her disability, the school district must offer homebound instruction to provide the child with a FAPE. 20 U.S.C. § 1401(29)(A) (stating that special education includes, if necessary, "instruction conducted . . . in the home"). Furthermore, "[a] school district cannot refuse to consider parents' concerns when drafting an IEP. *M.M. v. Lancaster County Sch.*, 702 F.3d 479, 488 (8th Cir. 2012) (citing *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 53, 126 S. Ct. 528, 163 L. Ed. 2d 387 (2005)). The IDEA explicitly requires school districts to include the parents in the team that drafts the IEP, to consider "the concerns of the parents for enhancing the education of their child," and to address "information about the child provided to, or by, the parents." *Id.* (citing 20 U.S.C. § 1414(d)(3)(A)(ii), (d)(4)(A)(ii)(III)).

Here, the IEP team properly considered both Dr. Ochoa's and Defendant's input on the Student's medical condition and placement. The District knew the Student has a complex medical condition that required constant medical attention and Dr. Ochoa's opinions regarding that condition should be afforded due weight. Moreover, the Student had not been to school since January 5, 2023, because Defendant C.V. reported that the Student was sick. AR 488-90. This homebound placement provided the Student education benefit where she otherwise would have received none because she was unable to attend in person due to her "[c]omplex [m]edical history." AR 2470.

After the IEP team changed the Student's placement, the District provided the Student with homebound services in compliance with her IEPs. *See* AR 2533-56. Defendant C.V. reported on March 3, 2023, that homebound services had gone well considering the circumstances. AR 2475. Further, even with homebound placement in the spring semester, the Student made progress on the objectives in her first-grade IEP. AR 2501.

Accordingly, the Student received a FAPE during her first-grade year. Neither the 1:10 classroom setting, the conduct of other students, the measures taken to keep the Student safe, or changing placement based on the requests of Defendants and the Student's medical provider impeded the Student's ability to progress.

### B. The Student Was Not Denied FAPE During Her Second-Grade Year Because She Did Not Return to the District.

Despite the Student never returning to the District for the 2023-2024 school year, the HO found a denial of FAPE for the Student's second-grade year. AR 153-54. The HO found the District did not amend the Student's IEP in anticipation of her return to in-person instruction. AR 153. While the Student was to be placed in a different school at the District, the HO concluded there was otherwise no evidence the IEP team took sufficient steps to ensure the Student's safety.

AR 154. The HO concluded that the Student's IEP for the 2023-2024 school year did not meet the substantive requirements of the IDEA, resulting in a denial of FAPE.

When a student does not come to school, however, there can be no corresponding loss of educational benefit. For example, in *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 63 (3d 2020), a student was unilaterally placed in a private school. The student's parents requested tuition reimbursement based, in part, on the fact that the student was not offered a FAPE on his first day of school in the district. *Id.* at 65. The student, however, never attended a single class in the school district that school year. *Id.* at 69. The court concluded that, absent evidence of educational loss, the school district could not be liable. *Id.* Similarly, in this case, Defendants cannot show a denial of FAPE for the 2023-2024 school year because the Student never attended school at the District her second-grade year.

The District developed an IEP for the Student's second-grade year, but more was to be done once the Student was able to return to campus. The IEP team held an annual review conference on April 25, 2023, to develop an IEP for the Student's second-grade school year. AR 2498-2523. The IEP team noted her homebound placement but was to meet in August to determine if the Student was able to return to school based on information provided by her doctor. AR 2501. At that time, physical and speech therapy would be reviewed and reinstated if she returned to school. *Id.* At the April 25, 2023, conference, Defendant C.V. mentioned reports from outside therapy agencies and possibly increasing the time of therapies when the Student returned to campus. *Id.* The IEP team asked for reports to be brought for consideration.

The IEP team found that, with a return to campus, the Student was recommended to be served in a 1:10 classroom setting where she would receive 100 minutes, 5 times per week of literacy instruction; 55 minutes, 5 times a week of math instruction; 55 minutes, 5 times a week of fine motor/writing instruction; 55 minutes, 5 times a week of daily living instruction; and 55

minutes, 5 times a week of adaptive behavior instruction. *Id.* Related services provided in school at the time the Student went on homebound instruction would also be reinstated, consisting of 120 minutes of speech per month, 180 minutes of physical therapy per month, 2 session of transportation per day, and 120 minutes of personal care per day. *Id.* The IEP team also set goals and objectives for the second-grade year. AR 2509-13.

At the April 25, 2023, IEP meeting and the prior, March 3, 2023, IEP meeting, Defendant C.V. discussed transferring the Student to a different school district for the 2023-2024 school year. AR 2475, 2504. On a telephone conference with Defendant C.V. on April 21, 2023, the District offered to allow the Student to attend a different school if she returned to campus for her second-grade year, but Defendant C.V. stated she was going to seek a school choice transfer. AR 2813. While Defendant C.V. told the District she was going to transfer the Student out of District, she did not do that before the 2023-2024 year began. Accordingly, and consistent with what Defendant C.V. was told in her April 21, 2023, conference call with the District, the District placed the Student at a different school for her second-grade year. The new classroom had an experienced certified special education teacher and students at a similar level of need as the Student, which the District believe would be a good fit. AR 1434.

Defendant C.V. attended open house but never returned the Student for her second-grade year. AR 1295-97. At the same time, Defendants were in the process of enrolling the Student at Compass. AR 1292. Defendants then filed a due process complaint on August 25, 2023, the end of the first week of school. AR 1-16, 1296. After filing for a due process hearing, Dr. Ochoa provided a note requesting that the Student's absences be excused due to her medically-fragile condition. AR 2835.

Because the Student never attended school at the District for the 2023-2024 school year, Defendants cannot show any educational loss necessary for a denial of FAPE. *See C.H.*, 606 F.3d

at 69. Even if the District had been able to implement its IEP, the IEP developed for the Student's second-grade year was reasonably calculated to enable her to make progress. The HO concluded otherwise because there were not sufficient steps to ensure safety and the District intended to keep the Student in her activity chair and make her wear a helmet indoors at all times. AR 154. To the contrary, the District took efforts to reduce the risk of injuries from other students by moving her to another school, away from Student J. The second-grade IEP also provided that the Student does not wear a helmet inside but has one available. AR 2514. Thus, there is no evidence to support the HO's conclusion that the second-grade IEP, if implemented, would have resulted in a denial of FAPE. Accordingly, the Order should be reversed, and Defendants' claims dismissed.

**C. The HO Erred in Awarding Indefinite Private Placement at Compass.**

The HO erred in awarding indefinite private placement at Compass. Compass is not an appropriate placement under the IDEA. Further, the indefinite placement at Compass exceeds the relief allowable for any claimed denial of FAPE.

1. <u>Compass Is Not an Appropriate Placement.</u>

In determining the educational placement of a child with a disability, each public agency must ensure that, "Unless the IEP of a child with a disability requires some other arrangement, the child is educated in the school that he or she would attend if nondisabled[.]" 34 CFR 300.116(c). For purposes of the IDEA, parents are only entitled to reimbursement for private placement if the public placement violated the IDEA and the private school placement is proper under the IDEA. *T.B. v. St. Joseph Sch. Dist.*, 677 F.3d 844, 845 (8th Cir. 2012). Here, the HO erred in awarding private placement because, as addressed above, the District provided the Student a FAPE. Moreover, the District can appropriately educate the Student at the District. AR 1442.

Moreover, to qualify for reimbursement under the IDEA, parents need to demonstrate the private placement provides "educational instruction specially designed to meet the unique needs

of a handicapped child, supported by such services as are necessary to permit the child to benefit from the instruction." *T.B.*, 677 F.3d at 845 (citing *Rowley*, 458 U.S. at 188-89) (emphasis added). For many reasons, Compass is not an appropriate placement for the Student. There is no evidence in the record that Compass is accredited or that its curriculum is approved by the State of Arkansas. There is no evidence in the record that Compass is required to or is otherwise willing to implement the IEP developed by the District. Last, there is no evidence in the record that Compass Academy is the least restrictive environment for the Student, as there was no evidence presented that Student will be educated with non-disabled students to the maximum extent possible. In light of these facts, while Defendants are free to place Student in whatever setting they deem appropriate, the District is not obligated to reimburse those expenses.

2. <u>Indefinite Private Placement Exceeds the Available Relief.</u>

"To the extent [private placement] reimbursement is dependent on the failure to provide a FAPE, it may not extend to periods when no FAPE violation occurred." *Spring Branch Indep. Sch. Dist. v. O.W.*, 961 F.3d 781, 799 (5th Cir. 2020) (citing *Dallas Indep. Sch. Dist. v. Woody*, 865 F.3d 303, 318 (5th Cir. 2017) ("[N]o case shown to us has permitted reimbursement for the time period before a school district's obligations under the Act arose."). "Put differently, 'the right to private school reimbursement, once adjudicated, does not go on indefinitely, but only while the school district is noncompliant (or acknowledges its inability to comply) with its obligation to provide a 'free appropriate public education.''" *Spring Branch*, 961 F.3d at 799 (citing *Casey K. ex rel. Norman K. v. St. Anne Cmty. High Sch. Dist. No. 302*, 400 F.3d 508, 516 n.1 (7th Cir. 2005)).

Compensatory education awards, in contrast, may include tuition reimbursement and are designed to provide "services prospectively to compensate for a past deficient program." *Draper v. Atlanta Indep. Sch. Sys.*, 518 F.3d 1275, 1280 (11th Cir. 2008). Such awards are "restorative—and the damages are strictly limited to expenses necessarily incurred to put the Student in the

education position she would have been had the District appropriately provided a FAPE." *Indep. Sch. Dist. No. 283 v. E.M.D.H.*, 960 F.3d 1073, 1085 (8th Cir. 2020).

In this case, the HO awarded the tuition, fees, and costs of private placement at Compass indefinitely, beginning on September 18, 2023. AR 156. While unclear whether this is an award of private placement reimbursement, compensatory education, or both, neither supports this award. If awarded as private placement, the reimbursement could only extend to the 2023-2024 school year, when the HO found the District denied the Student a FAPE and she was enrolled at Compass. If the award is compensatory education, the award could only extend to an additional school year, the 2024-2025 school year. The HO found the District failed to provide a FAPE for two school years, 2022-2023 and 2023-2024 (when the Student was enrolled at Compass). A compensatory education award for two years of private placement would be more than sufficient to compensate for any past deficient program the HO may have found.

There is no basis, and the HO certainly provides none, for an award of indefinite private placement. Again, the HO found the Student was denied a FAPE for about a year before she enrolled at Compass on September 18, 2024. Yet, the HO ordered compensatory education indefinitely. This award could extend to over twelve (12) years from the date of the Order, until 2036, when the Student turns twenty-one (21) years of age. Ark. Code Ann. § 6-41-205(a). This award cannot be shown necessary to place the Student in the position she would have been in but for the claimed FAPE denial. Accordingly, this award should be reversed.

In sum, the HO erred in holding Compass is an appropriate placement and awarding tuition, fees, and costs of Compass indefinitely. The Order should, therefore, be reversed and Defendants' claims dismissed.

## VI. CONCLUSION

In conclusion, the HO erred in concluding the Student was denied FAPE during her first- and second-grade years. The HO further erred in awarding indefinite private placement at Compass. The Order in favor of Defendants should, therefore, be reversed and judgment entered in favor of the Conway School District.

Respectfully submitted,

Jay Bequette, Ark. Bar No. 87012
W. Cody Kees, Ark. Bar No. 2012118
Phillip M. Brick, Jr., Ark. Bar No. 2009116
BEQUETTE, BILLINGSLEY & KEES, P.A.
425 West Capitol Avenue, Suite 3200
Little Rock, AR 72201-3469
Phone: (501) 374-1107
Fax: (501) 374-5092
Email: jbequette@bbpalaw.com
Email: ckees@bbpalaw.com
Email: pbrick@bbpalaw.com

*Attorneys for Plaintiff, Conway School District*